UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

TAKATA CORPORATION,

Defendant.
_____/

Case No. 16-20810

Honorable George Caram Steeh

**RESPONSE TO DEFENDANT'S OBJECTION TO SPECIAL MASTER'S PROPOSED INDIVIDUAL RESTITUTION FUND METHODOLOGY**

In the Rule 11 Plea Agreement and attendant Restitution Order, the parties jointly recommended that the Special Master be the person entrusted to determine the individuals who should receive restitution. The Special Master proposes that the $125 million Individual Restitution Fund "will not compensate non-U.S. citizens or non-permanent residents injured outside of the United States or its territories or possessions." Proposed Individual Restitution Fund Methodology at 3. This proposal is a reasonable exercise of the Special Master's discretion, which the Rule 11 Plea Agreement unambiguously gives him, to decide the universe of claimants entitled to compensation from the Individual Restitution Fund. Defendant Takata Corporation has not provided any compelling reason for the Court to overturn the Special Master's reasonable exercise of discretion here.

# ARGUMENT

## I. THE PARTIES ENTRUSTED DETERMINATION OF THE UNIVERSE OF ELIGIBILE CLAIMANTS TO THE SPECIAL MASTER.

The Rule 11 Agreement directly addresses who gets to decide the question of individual restitution awards. That person is the Special Master (operating under the Court's ultimate authority). Paragraph 3(E)(4) of the Rule 11 Plea Agreement states:

> The parties further agree that the appointment of a Special Master is appropriate and necessary to determine the proper administration and disbursement of the . . . restitution monies the Defendant will pay in this case. The parties therefore jointly recommend . . . [a Special Master] to make findings of fact and recommendations to this Court regarding: (a) the individuals and entities who should receive restitution; and (b) the restitution amounts which these individuals and entities should receive.

The proposed restitution order which was attached to the plea agreement and agreed to by Takata, as well as the final order issued by the Court, uses similar language.

Takata ignores this provision. The parties agreed to give the Special Master discretion in making eligibility determinations. So long as the Special Master exercises that discretion reasonably and in good faith, there are no grounds to reverse him.

## II. LIMITING THE UNIVERSE OF ELIGIBLE CLAIMANTS IS APPROPRIATE BECAUSE THE INDIVIDUAL RESTITUTION FUND WAS NEGOTIATED BY THE UNITED STATES JUSTICE DEPARTMENT ON BEHALF OF THE AMERICAN PEOPLE.

The lengthy investigation of Takata Corporation and its U.S. subsidiary TK Holdings for a massive and systemic fraud related to Takata's exploding airbags - - in which the overwhelming majority of known injuries and deaths occurred in the United States - - was conducted exclusively by United States prosecutors and investigators in the United States, paid for by American taxpayers, and resulted in the conviction of Takata Corporation for wire fraud in the United States District Court.

Although the parties agreed that Takata's applicable fine pursuant to the United States Sentencing Guidelines was in the range of $771 million to $1.5 billion, the negotiated fine that Takata actually paid to the United States was a scant $25 million - - just 2% of the mid-point of those guidelines.  This was not a mistake.  Takata advised that its all-in capability for restitution and fines would be $1 billion.  The situation facing the United States was wholly unsatisfying:  Takata's financial contribution was finite and inadequate; the auto manufacturers whom Takata defrauded into purchasing $482 million worth of faulty Takata airbags were victims under the Crime Victim Rights Act legally entitled to that amount in restitution; that $482 million restitution award was tied exclusively to sales of defective Takata airbags to wire fraud victims, and in no way addressed the billions of dollars in U.S.

3

recall costs borne by virtually all auto manufacturers to make vehicles safe for Americans to drive with next to no contribution from Takata; and individual constituents had been harmed (or would later be) by Takata's incredibly dangerous products. Without a negotiated resolution, the already distressed U.S. recall process would have been in even more jeopardy, thus potentially resulting in even more personal injuries and fatalities.

Although being a recall participant or an individual injured or killed by a Takata airbag did not entitle either type of stakeholder to restitution for Takata's crime of wire fraud under the Crime Victim Rights Act, it was incredibly important to the United States to afford them with at least some level of financial assistance. Thus, the United States negotiated the Additional Restitution categories set forth at Paragraph 3(E)(2) of the Plea Agreement. Funds were available for such purposes only because the United States opted to forego its substantial fine. In conducting these negotiations, the Department of Justice at all times acted on behalf of, and represented the interests of, the American people. This is not to say that the government was unmindful of the harm Takata's products caused outside the United States, but in advocating for and creating additional compensation that was not mandated by the Crime Victim Rights Act, the Department of Justice acted exclusively on behalf of its own constituents. Nothing in the plea agreement requires a contrary finding.

## III. THE PLEA AGREEMENT IS UNAMBIGUOUS: THE ONLY CLAIMANTS ENTITLED TO ADDITIONAL RESTITUTION "REGARDLESS OF LOCATION" ARE AUTO MANUFACTURERS.

The United States government owes no duty to worldwide claimants. This was not a global resolution - - this was a resolution of a criminal matter in the United States District Court for a violation of the laws of the United States. Takata's unilateral assumption that the discretionary Individual Restitution Fund would apply worldwide ignores these realities. It is also contradicted by the language in the Rule 11 Plea Agreement itself.

As noted above, in Paragraph 3(E)(2), the Rule 11 Plea Agreement contains two provisions creating discretionary Additional Restitution to be paid to stakeholders who were not statutory victims of Takata's crime of wire fraud. The phrase "regardless of location" appears exclusively in Paragraph 3(E)(2)(ii), which governs Additional Restitution for the claimant group of auto manufacturers saddled with recall costs. Tellingly, Takata did not seek to include the same clause in the section addressing the claimant group of injured individuals, Paragraph 3(E)(2)(i). Borrowing Takata's own logic, if Takata "truly intended" for the claimant group of injured individuals to extend "regardless of location," Takata "could have included such language in the Plea Agreement - - but it did not." Defendant's Objection at 5. The only claimants entitled to Additional Restitution "regardless of location" are the

ones described in the section of the agreement where that language actually appears: auto manufacturers.

## IV. FOREIGN CLAIMANTS HAVE RECOURSE ELSEWHERE.

The Special Master's domestic definition of Eligible Claimant does not leave foreign claimants without recourse. They have remedies in the Takata bankruptcy and in the Takata Civil Rehabilitation Proceeding in Japan. As the Special Master explained:

> The Special Master understands that claims to the separate compensation fund to be established as part of the Takata bankruptcy reorganization will not be so limited, and thus any amount in that fund will be available to individuals worldwide. The Special Master also understands that all claimants, including foreign claimants, have been given an opportunity to make claims and seek recoveries through the TKH bankruptcy in Delaware and the Takata Civil Rehabilitation Proceeding in Japan.

Proposed Individual Restitution Fund Methodology at 4.

In addition, people injured by Takata products could and should avail themselves of whatever legal remedies are available in the country where they were victimized. But the Individual Restitution Fund should not be extended beyond the United States where other, more apposite venues exist for foreign individuals, and where their own governments are their more appropriate advocates against Takata.

## CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that Defendant's Objection to Special Master's Proposed Individual Restitution Fund

Methodology be denied, and that the Court approve the procedures that the Special Master proposed in his Individual Restitution Fund Methodology.

| | |
|---|---|
| MATTHEW SCHNEIDER<br>United States Attorney<br>Eastern District of Michigan | SANDRA MOSER<br>Acting Chief, Fraud Section<br>Criminal Division<br>U.S. Department of Justice |
| *s/ Erin S. Shaw*<br>By:  ERIN S. SHAW<br>Assistant United States Attorney | *s/ Brian K. Kidd*<br>BRIAN K. KIDD<br>CHRISTOPHER D. JACKSON<br>Trial Attorneys, Fraud Section |

Dated:  February 1, 2018