UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                              CASE NO. 16-CR-20810
v.                           HON. GEORGE CARAM STEEH

TAKATA CORPORATION,

       Defendant.
_____/

**ORDER GRANTING SPECIAL MASTER'S REQUEST
FOR APPROVAL OF THE REVISED INDIVIDUAL
RESTITUTION FUND METHODOLOGY (Doc. 77) and
OVERRULING DEFENDANT'S OBJECTION (Doc. 56)**

      Now before the Court is the Special Master's Request for Approval of the Revised Proposed Individual Restitution Fund Methodology ("Revised Methodology") which was submitted to the Court on March 15, 2018 and filed on the docket on March 19, 2018. (Doc. 77). The Special Master's initial Request for Approval of the Proposed Methodology ("Proposed Methodology") was filed on January 2, 2018 (Doc. 54). Defendant Takata Corporation ("Takata") timely filed an objection to the Proposed Methodology on January 11, 2018, limited to the issue of defining who are Eligible Claimants for purposes of the Individual Restitution Fund. (Doc. 56). The government filed a response on February 1, 2018, (Doc. 58) and

Takata filed a reply on February 12, 2018, (Doc. 69) which the Court has duly considered. A hearing was held on March 5, 2018. Having carefully considered the written submissions and the oral presentations, and for the reasons set forth below, the objection shall be overruled and the Special Master's Request for Approval of the Revised Individual Restitution Fund Methodology shall be granted.

According to the Proposed Methodology, Eligible Claimants who may recover from the Individual Restitution Fund are defined as:

> "Eligible Claimant" means an individual (1) who has suffered personal injury or death caused by the rupture or aggressive deployment of a Takata phase-stabilized ammonium nitrate (PSAN) airbag inflator (the "<u>PSAN Airbag Inflator Malfunction</u>") and was at the time the PSAN Airbag Inflator Malfunction occurred (a) in a vehicle registered in the United States, its territories or its possessions, or (b) a U.S. citizen or permanent resident (wherever the PSAN Airbag Inflator Malfunction occurred), and (2) who has not already resolved his or her claim against Takata Corporation and/or any of its affiliates.

(Doc. 54-1 at PgID 420). The proposed definition of Eligible Claimants in the Revised Methodology is slightly broader in scope, providing:

> "Eligible Claimant" means an individual (1) who has suffered personal injury or death caused by the rupture or aggressive deployment of a Takata phase-stabilized ammonium nitrate (PSAN) airbag inflator (the "<u>PSAN Airbag Inflator Malfunction</u>"); (2) who was at the time the PSAN Airbag Inflator Malfunction occurred (a) in a vehicle located or registered in the United States, its territories or its possessions, or (b) a U.S. citizen or permanent resident (wherever the PSAN Airbag

>   Inflator Malfunction occurred); and (3) who has not already resolved his or her claim against Takata Corporation and/or any of its affiliates.

(Doc. 77-1 at PgID 2127). The minor revisions to the definition of "Eligible Claimant" set forth in the Revised Methodology do not alter the court's analysis here. Takata argues this court should reject the definition of "Eligible Claimant" as set forth in the Proposed Methodology for six reasons. The court considers each argument in turn.

First, Takata argues that the Plea Agreement itself imposes no geographic or nationality limitation on Eligible Claimants under the Individual Restitution Fund. However, the parties left the final determination of Eligible Claimants to the Court for resolution based on the recommendation of the Special Master. Specifically, Paragraph 3(E)(4) of the Rule 11 Plea Agreement states:

> The parties further agree that the appointment of a Special Master is appropriate and necessary to determine the proper administration and disbursement of the . . . restitution monies the Defendant will pay in this case. The parties therefore jointly recommend, as set forth more fully in [the joint proposed restitution order], that this Court appoint . . . [a Special Master] . . . to make findings of fact and recommendations to this Court regarding: (a) the individuals and entities who should receive restitution; and (b) the restitution amounts which these individuals and entities should receive.

(Doc. 23 at PgID 108).  Also, the Plea Agreement Paragraph 3(E) provides that "the parties agree to submit a joint proposed restitution order to the Court, included with this Agreement as Attachment E."  (Doc. 23 at PgID 105).  The Joint Proposed Restitution Order specifically provided that "[p]ursuant to 18 U.S.C. § 3664(d)(6), within thirty days of this order the Court will appoint a Special Master to make findings of fact and recommendations to this Court regarding: (a) the individuals and entities entitled to restitution."  The Restitution Order entered by this Court included this same language.  (Doc. 24 at PgID175).  Thus, it is clear that the parties provided that the Special Master make recommendations to the Court for it deciding the class scope of Eligible Claimants under the Individual Restitution Fund.

The government suggests that the Court consider the Special Master's recommendations using an abuse of discretion standard, but Takata correctly points out that this Court must review his recommendations *de novo*.  18 U.S.C. § 3664(d)(6).

Takata argues that the Statement of Facts in the Plea Agreement involve global misconduct and thus potential individual claimants should be identified globally.  Takata further argues that because a U.S. company — TK Holdings Inc. ("TK Holdings") — manufactured every PSAN inflator that

is or will be the subject of claims worldwide, no basis exists to exclude non-U.S. citizens from the scope of compensation.   But the Individual Restitution Fund at issue here was established as part of a resolution of a criminal matter in the United States District Court for a violation of the laws of the United States.   Moreover, the investigation of Takata and its U.S. subsidiary TK Holdings for a massive and systematic fraud related to Takata's exploding airbags — in which the overwhelming majority of known injuries and deaths occurred in the United States — was conducted exclusively by United States prosecutors and investigators in the United States, and was paid for by American taxpayers.   Significantly, the parties agreed that Takata's applicable advisory guideline range for determination of a fine pursuant to the United States Sentencing Guidelines was in the range of $771 million to $1.5 billion (Doc. 23 at PgID 101), but the negotiated fine that Takata actually paid to the United States was a mere $25 million, just two percent of those guidelines.

Although individuals killed or injured by a Takata airbag are not necessarily entitled to restitution for Takata's crime of wire fraud under the Crime Victim Rights Act, the government made it a priority to afford these individuals some level of compensation.   Thus, the United States negotiated the Additional Restitution categories set forth at Paragraph

3(E)(2) of the Plea Agreement.  Funds were available for such purposes only because the United States opted to forego its substantial fine.  In creating the Individual Restitution Fund, the Department of Justice acted exclusively on behalf of its own constituents.  Accordingly, it is reasonable to limit individual claimants to those who are U.S. citizens or permanent residents, or those injured or killed while in a vehicle registered in the United States, its territories or its possessions.

Furthermore, other language of the Plea Agreement also militates in favor of a geographical limitation for the Individual Restitution Fund. Paragraph 3(E)(2)(ii) of the Plea Agreement provides for Additional Restitution for the claimant group of auto manufacturers saddled with recall costs "*regardless of location.*"  (Doc. 23 at PgID 106) (emphasis added). But the language used to describe the Individual Restitution Fund set forth at Paragraph 3(E)(2)(i) includes no similar language to suggest that restitution should be on a global basis.  If Takata intended for the claimant group of injured individuals to extend "regardless of location," Takata could have included such language in the Plea Agreement, but did not. However, Takata argues that the second OEM Restitution Fund provision in the Plea Agreement contains no "*regardless of location*" provision, yet that fund will also be available to OEMs worldwide.  For reasons discussed

later in this opinion, there are several additional reasons why the OEMs should be treated differently than individual claimants even where the language in the Plea Agreement regarding the two funds is similar.

Second, Takata argues the Proposed Methodology should be rejected because it is based, in part, on the "intention of the prosecuting governmental authorities," (Doc. 54-1 at PgID 420), rather than on the plain language of the Plea Agreement. For the reasons set forth above, the Court has already determined that the language of the Plea Agreement supports the Court's conclusion here that it is appropriate to limit the class of Eligible Claimants to the definition set forth by the Special Master in his Proposed Methodology. (Doc. 54-1 at PgID 420). Takata argues the court should afford greater weight to its interpretation of the individual restitution claimants as defined by the Plea Agreement than to the government's interpretation because any ambiguities in the Plea Agreement must be resolved in favor of Takata.

Takata correctly states that law that plea agreements are contractual in nature and courts may use traditional principles of contract law in interpreting and enforcing them. *United States v. Randolph*, 230 F.3d 243, 249 (6th Cir. 2000). Furthermore, Takata is correct that ambiguities in plea agreements are to be construed against the government. *Id.* But here,

the parties expressly contracted that the identity of individual claimants was left to the Special Master to identify in proposed findings of fact and recommendations to this Court. See Plea Agreement, Paragraph 3(E)(4); Joint Proposed Restitution Order at ¶ 5. Accordingly, there is no ambiguity in the Plea Agreement. Because the Court does not base its holding here on a preference for the government's interpretation of the Plea Agreement over Takata's interpretation, the court rejects Takata's objection.

In its reply, Takata also argues that the government's press release announcing the Plea Agreement on January 13, 2017 suggests that the government intended the class of compensable individual victims to be defined globally. Specifically, the press release stated, "[W]e will continue to aggressively investigate corporate fraud allegations to protect consumers in the United States and elsewhere." A reasonable interpretation of the above statement is simply that the criminal prosecution would benefit all consumers across the world, but not necessarily that consumers would receive monetary compensation on a global basis. As part of the Plea Agreement, Takata agreed to pay a $25,000,000 criminal fine, and to enter into a compliance and ethics program designed to prevent and detect fraudulent conduct. (Doc. 23 at PgID 104, 110-12). Moreover, one of the relevant considerations of the Plea Agreement was

that Takata "has cooperated with the National Highway Traffic and Safety Administration ("NHTSA") in connection with conducting recalls of the affected products and in undertaking other remedial measures." *Id.* at PgID 103.   All of these things would inure to the benefit of consumers worldwide, regardless of the existence of the Individual Restitution Fund.

Third, Takata argues that because the Special Master has not imposed any geographical limitation for restitution to the automotive manufacturers ("OEMs"), there is no rational basis for treating individuals differently.   To the contrary, the Court finds that it reasonable to treat individuals differently than the OEMs.   First, the Restitution Fund for the OEMs is significantly larger.   The OEM Restitution Fund is $850,000,000 while the Individual Restitution Fund is only $125,000,000.   The Special Master had identified less than 100 OEMs, (Doc. 49-1), whereas individual claimants even under the Special Master's definition, which sets forth a geographic and nationality limitation, could measure in the thousands.   In fact, the Special Master estimates that there will be between 251 and 300 current claims by individuals, with as many as between 716 and 1,469 compensable future claims.   (Doc. 54-1 at PgID 422-424).   These estimates are based on the limitation that individual claimants must have been injured or killed while in a vehicle registered in the United States, its

territories or its possessions, or be U.S. citizens or permanent residents regardless of where the airbag inflator malfunction occurred. The Special Master estimates that the value of current and future rupture and aggressive deployment claims to be paid from the Individual Restitution Fund is $710.7 million to, conservatively, $1.558 billion. (Doc. 54-1 at PgID 429). Because the Individual Restitution Fund is limited to $125,000,000, it is clear that the Fund is seriously underfunded even when the individual claimants are limited to U.S. citizens and permanent residents, or those injured or killed while in a vehicle registered in the United States, its territories or its possessions. Those not falling within the Special Master's domestically defined class of Eligible Claimants are referred to as the Rest of the World ("ROW").

It is unknown exactly how large the class of ROW victims who have been injured or killed by a Takata airbag inflator malfunction might be. However, Dr. Thomas Vasquez, an expert for a Takata U.S. affiliate, TK Holdings, prepared a report recently filed in the Takata bankruptcy proceeding in Delaware (Case No. 17-11375-BLS, Doc. 1789-16), which estimates there will be 9,921 Takata Airbag Inflator accidents outside the United States and its territories in the future. Of those incidents, he estimates that there will be about 264 compensable claims based upon a

9.5 percent propensity to sue rate, thus amounting to $100 million as the nominal indemnity cost of resolving all pending and future airbag inflator related claims for victims outside the United States and its territories. This amount nearly equals the total amount of the Individual Restitution Fund. Although Dr. Vasquez's estimates far exceed the amount of funds that would be available under the Individual Restitution Fund, the Special Master suggests that even Dr. Vasquez's rather significant estimate likely understates the value of pending and future claims because the figures are not based on reliable data, but rather are based on extrapolations from available U.S. data that may not be comparable. Dr. Vasquez admits that there is no reliable count of "at risk" ROW vehicles or accident rates, or even any data on average indemnity payments outside the United States. The Special Master also criticizes Dr. Vasquez for using an extremely low propensity to sue rate which is likely much higher based on the availability of the Individual Restitution Fund, and bankruptcy trusts. In sum, the only estimate of claims for airbag inflator accidents and potential claims outside the United States is that prepared by Dr. Vasquez as part of the bankruptcy proceedings. While his report is susceptible of serious criticism for lack of reliability, even his very conservative numbers suggest that opening up the class of Eligible Claimants beyond the domestic definition proposed by the

Special Master would nearly double the amount of claims. The Individual Restitution Fund is much too small to compensate ROW claimants.

Additionally, it is obvious that administering the Individual Restitution Fund on a worldwide basis would pose significant and very expensive management problems. In terms of notice, the Special Master proposes direct notice to those who have been identified and publication notice. (Doc. 54-1 at PgID 448-450). The publication notice will entail display ads on numerous online sites, social media ads, publication in a national newspaper, radio public service announcements, as well as a press release to reach thousands of media contacts. *Id.* at PgID 449-50. Expanding the class of eligible individual claimants to reach those injured or killed by a Takata airbag inflator malfunction on a worldwide basis would exponentially burden the Special Master in terms of providing notice, verifying causation, and processing claims. In sum, there are significant differences between the OEMs and the individual claimants which supports granting OEMs relief on a global basis but limiting eligible individual claimants on a domestic basis.

Fourth, Takata argues that the statutes forming the basis for the Restitution Order, 18 U.S.C. §§ 3663A(a)(3) and 3663(a)(3), provide for broad relief and support the inclusion of worldwide claimants. While such

relief may be permitted by statute, here the parties left the contours of the class of eligible individual claimants to the Court to decide.   For the reasons identified in this order and in the Special Master's Proposed Individual Restitution Fund Methodology, the Court finds it appropriate to limit the class of eligible individual claimants on a domestic basis.

     Fifth, Takata argues that excluding foreign claimants improperly favors United States persons without a justifiable basis.   As discussed previously, there are many reasons justifying the limitation on the class of Eligible Claimants to persons who were injured or killed in a vehicle registered in the United States, its territories or its possessions, or those persons who are United States citizens or permanent residents wherever the airbag inflator malfunction occurred.   To recap, the United States has a significant interest in favoring its own citizens and permanent residents or those injured in the United States because the restitution is part of a criminal prosecution brought in the United States by the Department of Justice, was investigated and prosecuted exclusively in the United States, was funded by the American taxpayer; the government made the restitution funds available to United States individuals by foregoing the substantial fine owing to the United States and called for by the United States Sentencing Guidelines; the Individual Restitution Fund is seriously underfunded, and

the Department of Justice acted exclusively on behalf of its own constituents.

Also, the Special Master's domestic definition of Eligible Claimant does not leave foreign claimants without recourse. They have remedies in the Takata bankruptcy and in the Takata Civil Rehabilitation Proceeding in Japan. The Special Master explained:

> The Special Master understands that claims to the separate compensation fund to be established as part of the Takata bankruptcy reorganization will not be so limited, and thus any amount in that fund will be available to individuals worldwide. The Special Master also understands that all claimants, including foreign claimants, have been given an opportunity to make claims and seek recoveries through the TKH bankruptcy in Delaware and the Takata Civil Rehabilitation Proceeding in Japan.

(Doc. 54-1 at PgID 421). In its reply, Takata argues that Japanese bankruptcy law does not provide a mechanism for recognizing and reserving for future claims, and thus, is inadequate for future claimants. Even if true, global claimants may have recourse in bankruptcy proceedings in Delaware involving Takata's U.S. affiliate — TK Holdings. Moreover, people injured by Takata products may avail themselves of any legal remedies available in the country where they were victimized, and it is their own governments who are their more appropriate advocates.

Finally, the court considers Takata's argument that a global definition of personal injury claimants is consistent with Takata's treatment of such claimants in its insolvency proceedings.   Takata states that it is in the midst of rehabilitation proceedings in Japan, which have been formally recognized by the United States Bankruptcy Court, and its United States subsidiary and related entities are in Chapter 11 proceedings in the United States.   As previously discussed, foreign claimants have remedies in the Takata bankruptcy.   This matter involves a criminal prosecution brought by the United States in the United States District Court for a violation of the laws of the United States, and on behalf of persons of the United States. The fact that the foreign claimants may have recourse in the international bankruptcy proceedings does not alter this Court's decision to adopt the Special Master's recommendation that Eligible Claimants be defined domestically.

For the reasons set forth above, Takata's objection (Doc. 56) is OVERRULED.

IT IS FURTHER ORDERED that the Special Master's Request for Approval of the Revised Individual Restitution Fund Methodology (Doc. 77) is GRANTED.

IT IS FURTHER ORDERED that the Revised Methodology (Doc. 77-1), including the definition of Eligible Claimants, estimation of current and future claims, the proposed valuation matrix based on injury type and severity, the claims procedure process, and notice program proposed therein are APPROVED.

IT IS FURTHER ORDERED that the Court ACCEPTS the Special Master's recommendation that attorney's fees for current claims may not exceed one-third of an award, and attorney's fees for future claims may not exceed 25 percent of an award, except for good cause shown as to why the permissible attorney's fees portion of an award should be upwardly adjusted.

IT IS FURTHER ORDERED that the Special Master's costs and expenses related to the Individual Restitution Fund incurred after the Effective Date of the Plan in the TK Holdings Chapter 11 bankruptcy case, including but not limited to attorney's fees, will be paid from the reserve established pursuant to that Plan for the Special Master's fees and costs. Notwithstanding the foregoing, nothing in this Order shall affect, impair or relieve Takata of Takata's obligations under the Plea Agreement, the Restitution and Appointment Orders, and Takata's engagement letter with

the Special Master, including, without limitation, Takata's liability to the Special Master for the latter's fees and costs.

**IT IS SO ORDERED**.

Dated: March 21, 2018

                              s/George Caram Steeh
                              GEORGE CARAM STEEH
                              UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 21, 2018, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk