UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>        Plaintiff<br><br>v.<br><br>TAKATA CORPORATION,<br>        Defendant. | )<br>)<br>) Case No. 16-CR-20810-04<br>)<br>) Honorable George Caram Steeh<br>)<br>)<br>) |

**SPECIAL MASTER'S MOTION TO MODIFY THE POINT VALUE IN CONNECTION WITH THE REVISED INDIVIDUAL RESTITUTION FUND METHODOLOGY**

Eric D. Green, as Special Master of the Takata Restitution Funds, respectfully submits this motion (the "Motion") seeking entry of an order approving a modified Point Value for the IRF (the "2024 Point Value") in connection with the Revised Individual Restitution Fund Methodology and the Points Schedule that it incorporates that is used to allocate and distribute the Individual Restitution Fund ("IRF") to individuals who suffered (or will suffer) personal injury caused by the malfunction of a Takata Corporation airbag inflator, in the manner attached hereto as **Exhibit C**.

**BACKGROUND**

On January 2, 2018, the Special Master filed a request to approve the Proposed Individual Restitution Fund Methodology [Dkt No. 54], which set forth a points matrix used in a relative valuation approach to assign values amongst 21 different injury categories for claim allowance and distribution purposes (the "Points Schedule"). On March 19, 2018, the Special Master submitted a supplemental request to make minor revisions to the Proposed Methodology (the "Revised Proposed Methodology") [Dkt No. 77]. On March 21, 2018, the Court entered an order approving the Special Master's proposed approach to distributing the funds in the IRF (the "Revised IRF Methodology") [Dkt No. 78]. The Revised IRF Methodology sets forth the

1

requirements for qualifying as an Eligible Claimant[1] and divides eligible claims into two categories: (i) "Current Claims" filed with the Special Master by August 31, 2018; and (ii) "Future Claims"[2] filed after August 31, 2018. Under the Revised IRF Methodology, a portion of the IRF was allocated to Current Claims and the balance was reserved for Future Claims based on estimations of Current and Future Claims conducted by NERA Economic Consulting, Inc. ("NERA").

    i.    **2019 Claim Liability Re-Estimation for Initial Distributions**

On August 6, 2019, the Special Master filed the *Request for Approval of First Distribution of Individual Restitution Fund* (the "First IRF Distribution Request") [Dkt. No. 111]. The First Distribution Request was the first occasion that the Special Master sought this Court's approval to make distributions to claimants on account of their eligible claims. Therefore, in connection with the First IRF Distribution Request, the Special Master was required to obtain Court approval over the proposed dollar value of a point based, generally, on the predicted number of eligible claims that the IRF would receive in the future, their value, and the projected corpus of the funds held by the IRF.

As discussed in greater detail in the First IRF Distribution Request, leading up to the First IRF Distribution Request, the Special Master consulted with NERA and his other professionals, evaluated updated economic models and Current Claims data provided by them, and analyzed that information in comparison to the projections contained in the Revised IRF Methodology and

---

[1] "Eligible Claimant" means an individual (1) who has suffered personal injury or death caused by the rupture or aggressive deployment of a Takata phase-stabilized ammonium nitrate (PSAN) airbag inflator (the "PSAN Airbag Inflator Malfunction"); (2) who was at the time the PSAN Airbag Inflator Malfunction occurred (a) in a vehicle located or registered in the United States, its territories or its possessions, or (b) a U.S. citizen or permanent resident (wherever the PSAN Airbag Inflator Malfunction occurred); and (3) who has not already resolved his or her claim against Takata Corporation and/or any of its affiliates.

[2] The Special Master now refers to "Future Claims" as simply "Claims" given that all claims that are processed pursuant to this Request and thereafter were filed after August 31, 2018.

NERA's initial estimation in order to determine the Special Master's proposed value of an IRF point, and relatedly, the proportion of the IRF that must be reserved for Future Claims based on that proposed point value. In the First IRF Distribution Request, and in consultation with his professionals and advisors, the Special Master proposed the value of an IRF point to be **$64.34**. Accordingly, as noted in the First IRF Distribution Request, as a result of the Special Master's initial point value determination, 92% of the IRF would be reserved for what then were Future Claims and 8% of the IRF would be made available to compensate eligible Current Claims during the First IRF Distribution.

> In footnote 7 of the First IRF Distribution Request, the Special Master noted that:
>
> The value of a point remains subject to change based on, among other things, estimates of future claims, which are driven primarily by OEM recall completion rates and incidents of inflator ruptures, as well as actual investment results. The Special Master is receiving data on a rolling basis and, if the updated information results in a change in the value of a point, the Special Master will seek Court-approval of the revised value.

A month following the filing of the First IRF Distribution Request, the Special Master and his professionals obtained additional and updated data and information regarding the recall completion rates achieved by various original equipment manufacturers – the substance and analysis of which is detailed in NERA's *Estimation of Current and Future Liabilities – 2019 Update* [Dkt No. 115] (the "2019 Liability Re-Estimation"). Based upon updated recall completion information and data that the Special Master and his professionals received in August 2019 and review of its impact with NERA, the Special Master determined to revise his proposed value of an IRF point.[3] The Special Master proposed a revised value of an IRF point of **$71.01**. Accordingly, as a result of the 2019 Liability Re-estimation and as approved by the Court on

---

[3] *See* Special Master's Supplemental Request for Approval of First Distribution of Individual Restitution Fund [Dkt No. 113].

3

October 3, 2019 [Dkt No. 116], 91% of the IRF would be reserved for Future Claims and 9% of the IRF would be made available to compensate eligible Current Claims during the First IRF Distribution, as supplemented, with a proposed point value of **$71.01** (the "2019 Point Value").

The 2019 Point Value of $71.01 was employed by the IRF in the first eight (8) of the Special Master's distribution requests filed, and approved by the Court. [Dkt Nos. 111, 113, 116, 120, 121, 123, 126, 127, 129, 130, 132, 133, 135, 136, 139, 141].

    **ii.**    **2021 Claim Liability Re-Estimation and Modification of the Point Value**

On April 21, 2021, after coordinating with NERA, the original equipment manufacturers, and members of the plaintiffs' bar to obtain up-to-date claims and vehicle-usage data, the Special Master filed a *Motion to Modify the Point Value in Connection with the Revised Individual Restitution Fund Methodology* [Dkt. No. 143]. After consideration of the updated data and modeling incorporated in the 2021 Liability Re-Estimation Report, the Special Master proposed to set the value of an IRF point at $178 (the "2021 Point Value"). The Court subsequently approved the 2021 Point Value increase. [Dkt. No. 146]. The increase was applied retroactively and prospectively to the Special Master's distribution requests filed, and approved by the Court, to date. [Dkt Nos. 111, 113, 116, 120, 121, 123, 126, 127, 129, 130, 132, 133, 135, 136, 139, 141, 145, 147, 149, 150, 152, 153, 155, 156, 158, 159, 162, 163, 165, 166, 168, 169, 171, 172, 174, 175, 177, 178, 181, 182, 184, 185, 187, 188, 190, 191, 193, 194] (collectively , the "Distributions Requests"). Since its adoption, the 2021 Point Value has been adjusted on an annual basis to account for applicable rates of inflation.

    **iii.**    **2024 Claim Liability Re-Estimation and Modification of the Point Value**

The Special Master has continued to coordinate with NERA, the original equipment manufacturers, and members of the plaintiffs' bar to obtain up-to-date claims and vehicle-usage

data used to, among other things, update the 2021 Point Value. NERA's findings and recommendations are included in their report entitled "NERA 2024 Liability Estimation Update," which is attached hereto as Exhibit A (the "2024 Liability Re-Estimation Report"). After considering the current data and updated modeling incorporated in the 2024 Liability Re-Estimation Report, the Special Master, in consultation with his advisors, proposes to set the value of an IRF point at **$224** as the 2024 Point Value. The 2024 Liability Re-Estimation Report serves as the basis for the Special Master's recommendation to adopt the 2024 Point Value. The Takata Airbag Trust Compensation Fund (the "Trust") is in the process of considering an increase in the value of a Trust point based on the recommendations set forth in the 2024 Liability Re-Estimation Report. Subject to final approval of the Trust parties, the Special Master expects the value of a Trust point also to increase in connection therewith.

To ensure that no Claimant will be unfairly prejudiced by the implementation of the proposed 2024 Point Value, and subject to the Court's approval, the Special Master intends to issue supplemental top-up payments to Eligible Claimants whose Claims were previously valued or topped-up utilizing the 2021 Point Value under the Distribution Requests. Before accounting for the updated liability projections reflected in the 2024 Liability Re-Estimation Report, the 2021 Point Value—as adjusted for inflation—equals $201. The IRF points awarded to Eligible Claimants utilizing the 2021 Point Value under the Distribution Requests approved by the Court to date total 355,652.[4] In connection therewith and subject to approval of the 2024 Point Value, the Special Master has identified all Claimants eligible to receive supplemental payments based

---

[4] On December 11, 2023, the Special Master submitted his Request for Approval of the Twenty-Fourth Distribution of the Individual Restitution Fund [Dkt. No. 194] seeking to award 12,000 IRF points to eligible Claimants. If the Court grants this Motion, the Special Master intends to modify the Twenty-Fourth Distribution Request to reflect the adoption of the 2024 Point Value.

5

on the 2024 Point Value, listed on **Exhibit B** attached hereto, and requests that the Court approve these retroactive payments in the total amount of $8,179,996.00.[5] The resulting amount of the IRF reserved for claims received in the future shall be approximately $66 million.

## CONCLUSION

WHEREFORE, the Special Master requests that the Court enter an order substantially in the form attached hereto as **Exhibit C** approving the 2024 Point Value and Retroactive Payments as set forth herein.

Dated: January 12, 2024

Respectfully submitted,

_____
Eric D. Green, Special Master

---

[5] The Special Master recommends that one prior claimant not be provided any supplemental payments based on the increase in the value of a point. Claim No. 10000039 received a distribution in the amount of $7,101.00 (based on a 100 IRF points award) in connection with the Trustee's First Distribution Request [Docket Nos. 113 & 116]. *After* distribution of the $7,101.00 payment to Claimant on account of Claim No. 10000039, the Special Master learned that the Claimant's injuries were not caused by an airbag inflator manufactured by Takata. Although a Takata-manufactured inflator was installed in the passenger-side airbag unit of Claimant's vehicle at the time of the alleged accident, Claimant's injuries were allegedly caused by a rupture of the driver-side airbag unit. Thus, the Trustee recommends that Claim No. 10000039 be excluded from future supplemental payments.